[Note. Additional cases cited under this title will be found arranged in alphabetical order under the names of the vessels: e. g. "Proceeds of the Chapman. See Chapman."]

---

## Case No. 11,440.
### PROCEEDS OF PRIZES OF WAR.
[Abb. Adm. 495.] 1

District Court, S. D. New York. Feb., 1849.

PRIZE PROCEEDINGS—IN NAME OF GOVERNMENT—SUIT BY INDIVIDUAL CAPTORS—EVIDENCE—JURISDICTION.

1. Original proceedings taken in a court of admiralty against vessels captured in war by a public vessel, to divest the former ownership and to confiscate the captured property, should be taken in the name of the government under whose authority the capture was made, and not in the names of the individual captors, unless express authority is given to the latter to sue in their own names.

2. But where the proceeds of prizes have been brought into court, the parties entitled to distributive shares therein may file their libel in their individual names.

1 [Reported by Abbott Bros.]

3. Where the United States district attorney authorizes a suit for the condemnation of a prize to be filed in the names of the individual captors, the court will allow the proceedings to be so conducted, instead of requiring that the suit be instituted on behalf of the government.

[4. Cited in The Zaralla, Case No. 18,203, to the point that the rule requiring evidence obtained directly from documents or witnesses found on board of a vessel at the time of her seizure, is not absolute and peremptory.]

[5. Cited in The Edward Barnard. Case No. 4.291; The Advocate, Id. 94; and The A. J. View, Id. 118,—to the point that it is within the usage of prize courts to entertain and perfect their jurisdiction over property captured on board a vessel, without having the vessel itself brought within their cognizance.]

This was a libel in rem, filed by the commandant of the U. S. brig of war Vesuvius, against the proceeds of certain Mexican vessels captured by the libellant's vessel during the late war with Mexico, to obtain distribution of the same.

BETTS, District Judge. The libellant, commandant of the United States brig of war Vesuvius, files a libel in the nature of a notification in court, that during the late war between the United States and Mexico, whilst in command of said brig, and on the high seas and waters leading to the sea, he had captured as lawful prize of war the Mexican vessels or "bungos," with their cargoes, called the Bella India, the Francisca, the Joren, the Margarita, and the Julio. That the said vessels were taken into Laguna, a place then in possession of the naval forces of the United States, under the command of the libellant. That the vessels and cargoes were unseaworthy and perishable, and that no access could be had with them to any competent civil tribunal for prosecution and condemnation as prize of war, and that the same were accordingly sold at public auction by the libellant, conformably to the requisitions of the existing war-tariff of the United States, and that the proceeds of said property are now brought by him within the jurisdiction of this court, and prays the usual monition.

The court ordered a monition to issue, and the appointment of a prize commissioner, with directions to receive the funds representing the captured property, and deposit the same in the deposit bank of the court, subject to the order and decree of the court, and that he proceed to take testimony in the cause conformably with the standing rules of court.

The commissioner has filed his report in the premises, together with the testimony taken by him. The evidence fully supports the allegations of the libel. It is moreover shown, that the brig was of superior force to the Mexican vessels, and that Commodore Perry was flag officer, in chief command of the United States naval forces off that station.

The proceedings and proofs are such as, if the captured property had been brought before this court, would require its condemnation as prize of war. Does the anomalous man-

ner in which the case comes up vary the principle or interfere with the exercise of prize jurisdiction by this court?

The captures were made during the latter part of 1847. It is not necessary to detail the circumstances connected with the case of each particular vessel; they and their cargoes were sold at public auction at Laguna, under the direction of the properly constituted officers of the United States at that place, and the proceeds arrived in this port in January, 1849, when this libel was filed. If this proceeding is to be regarded as the original one to divest the Mexican ownership and confiscate the captured property, the action should have been in the name of the United States. When the capture is by a public vessel, the government sues in its own name and by its proper officer for condemnation (The L'Eole, 6 C. Rob. Adm. 220; Betts, Adm. 73; The Palmyra, 12 Wheat. [25 U. S.] 1; The Pizarro, 2 Wheat. [15 U. S.] 227), unless express authority is given the commandant of the ship to sue in his own name, and for the benefit of the owner, the state being the real proprietor of property so captured (French Guiana, 2 Dod. 162; 2 Browne, Civ. Law, 262–264).

But there may be a distinction in respect to the proceeds of a prize. The parties entitled to a distributive share of it may file their libel and attach such proceeds in their individual names, when no formal adjudication has been had in the matter, or compel the captors to proceed to condemnation of the proceeds. Genoa Ships, 4 C. Rob. Adm. 397. And in the English admiralty it would seem that although the king's proctor conducts the suit in matters of prize, in the case of public and private ships it is in the name of the captors and on their petition (2 Browne, Civ. Law, 444, 448; Capture of Chinsurah, 1 Act. 179), and the condemnation may still be made to the crown, and not to the immediate captors. Genoa Ships, 4 C. Rob. Adm. 392.

It is clear, upon general principles, that the captors of property lawfully prize of war, should have a participation in its value, unless they lose their privilege by misconduct; and when the thing captured is, itself, from the necessity of the case disposed of, and something else, money or goods. substituted for it, that the right of the captors should attach to that which represents the thing captured.

This doctrine is recognized in the strongest terms in English adjudications of high character. Genoa Ships, 4 C. Rob. Adm. 397; French Guiana, 2 Dod. 162; The L'Eole, 6 C. Rob. Adm. 224. Sir William Scott admits, that in case of capture in a distant part of the world of property perishing, it may justifiably be converted into other property, and that the court will have jurisdiction over such proceeds, the property still continuing prize. The L'Eole, 6 C. Rob. Adm. 224, 225.

If the proceeds in court, and claimed by this suit, are to be regarded as the prize itself, yet to be adjudicated upon, the course of practice of the American courts would, as before shown, require the libel to be filed in the name of the United States, unless authority is given to the captors to proceed in their own name.

I think such authority is clearly to be implied in this case. The secretary of the navy, it appears, directed the libellant to bring the property into this port, and obtain the adjudication of the proper court upon his rights and those of his crew. This unquestionably might have been effected through a libel filed by the district attorney in the name of the United States; but it seems, that the suit was instituted in the name of the captors with the knowledge and concurrence of the district attorney, and having been brought in such form, it must, under the circumstances, be deemed to have been brought with the assent and approval of the government.

Without considering, then, the question whether this action could be maintained technically against the proceeds until a formal adjudication of prize had been made, I see no obstacle in the way of allowing it to be conducted, as instituted, under the facts and circumstances accompanying this case.

I accordingly pronounce the captured property lawful prize of war, and that it be condemned as such; and that one half the net proceeds in court, after payment of costs, be paid into the treasury of the United States, and the other moiety be distributed amongst the captors, conformably to the report of the commissioner of prize.